IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AVT NEVADA, L.P., a Utah limited partnership,<br><br>                Plaintiff,<br>v.<br><br>CHRISTOPHER MCALARY, a citizen of the State of Nevada,<br><br>                Defendant. | MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION TO EXCLUDE TESTIMONY OF DEFENDANT'S PROPOSED EXPERT AS MOOT, AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:23-cv-594-TS-DBP<br><br>Judge Ted Stewart<br>Magistrate Judge Dustin B. Pead |

This matter comes before the Court on Plaintiff AVT Nevada, L.P's ("AVT") Motion for Partial Summary Judgment[1] and Motion to Exclude Testimony of Defendant's Proposed Expert Edward Burr,[2] and Defendant Christopher McAlary's Motion for Summary Judgment.[3] For the reasons discussed below, the Court will grant Plaintiff's Motion for Partial Summary Judgment, deny its Motion to Exclude as moot, and deny Defendant's Motion.

I. BACKGROUND

Plaintiff files suit against Defendant for breach of contract, breach of the covenant of good faith and fair dealing, and foreclosure of security interest on all assets of Defendant.[4]

---

[1] Docket No. 21.

[2] Docket No. 22.

[3] Docket No. 24.

[4] Docket Nos. 1, 8.

Plaintiff is an equipment leasing and finance company.[5] On June 5, 2020, Plaintiff entered into a Master Lease Agreement (the "Agreement") with non-party Cash Cloud, Inc. ("Cash Cloud").[6] Plaintiff and Cash Cloud also entered into a lease schedule on September 1, 2020.[7] Pursuant to these agreements, Plaintiff leased bitcoin kiosks (the "leased property") to Cash Cloud for a period of 30 months in exchange for $116,022.92 plus taxes each month.[8] In conjunction, Defendant entered into a Personal Guaranty in which he agreed to guarantee all of Cash Cloud's obligations under the lease.[9]

The lease began on October 1, 2020, and the final payment under the initial or base term was due, per the terms of the lease, on March 1, 2023.[10] Under the Agreement, at the end of the base term, Cash Cloud had multiple options, including to purchase the kiosks for an agreed upon price or to extend the lease.[11] However, upon an Event of Default under the Agreement, "Lessee shall be deemed to have irrevocably elected the Extension Option."[12]

Under the Personal Guaranty, Defendant agreed to guarantee the payment and performance of all obligations of Cash Cloud under the Agreement and each lease schedule.[13] Defendant guaranteed the "full, complete and prompt payment, performance and observance of all payment and other obligations of Lessee under each Lease," "resulting from Lessee's breach

---

[5] Docket No. 30 ¶ 1.
[6] Docket No. 21-3.
[7] Docket No. 21-4.
[8] Docket No. 30 ¶ 6; Docket No. 21-4, at 1.
[9] Docket No. 30 ¶¶ 4–5; Docket No. 21-5.
[10] Docket No. 30 ¶ 11.
[11] Docket No. 21-3 ¶ 21.
[12] *Id.*
[13] Docket No. 21-5, at 2.

or non-performance thereof and all of Lessor's collection costs and legal expenses and reasonable attorney fees related to any and all of the foregoing."[14]

In May 2020, Plaintiff filed a UCC-1 financing statement naming Cash Cloud and listed "[a]ll equipment, machinery, goods, personal and other property however described, leased pursuant to Lease Schedule No. CSHC_001 to Master Lease Agreement No. 2056266."[15] It further stated that "[t]his filing is made for informational purposes and not to suggest Secured Party's interest is limited to a security interest only."[16]

The parties performed under the lease until February 2023 when Cash Cloud filed for Chapter 11 bankruptcy and thereafter failed to make its monthly payment in March 2023.[17] Both qualify as an Event of Default under the Agreement.[18]

Under the Agreement, Plaintiff had multiple nonexclusive remedies upon an Event of Default, including to accelerate and declare due, "all Basic rent and other sums due as of the date of the Default, plus an amount equal to the Stipulated Loss Value set forth on the applicable Stipulated Loss Schedule, determined as of the month prior to the occurrence of the Default."[19] In this suit, Plaintiff seeks $1,314,335.00, which is the listed Stipulated Loss Value after the 30th month.[20]

---

[14] *Id.*

[15] Docket No. 24-1, at 51.

[16] *Id.*

[17] Docket No. 21 ¶¶ 21–22.

[18] Docket No. 21-3 ¶ 19.

[19] *Id.* ¶ 20.

[20] Docket No. 21, at 8; Docket No. 21-3 ¶ 20.

Plaintiff filed a Proof of Claim in the bankruptcy case in late March 2023.[21] In it, Plaintiff stated that its claim was for $1,314,335.00 and did not include interest or other charges.[22] Plaintiff also stated that the basis of the claim was "Equipment lease . . . stipulated losses."[23]

Thereafter, the bankruptcy court granted a Sale Motion that included the leased property over Plaintiff's objection.[24] Plaintiff objected on the basis that Cash Cloud did not have an interest in the leased property.[25] The leased property was sold at auction for the benefit of Cash Cloud and Plaintiff recovered a total of $273,733.50.[26]

Plaintiff also filed an administrative claim in the bankruptcy action for the "[p]ost-petition use of leased equipment in operation of Debtor's business."[27] Cash Cloud objected, arguing that the Agreement was a secured financing agreement rather than a true lease and therefore Plaintiff was not entitled to rent and is limited to a security interest in the equipment. Cash Cloud argued that because Plaintiff "was determined at the sale hearing to be a secured creditor rather than an equipment lessor, [it] . . . cannot have it 'both' ways."[28] The bankruptcy court did not grant the motion on other grounds but concluded that no part of the Sale Order prejudiced Plaintiff's "rights pursuant to its lease and other agreements with" Cash Cloud.[29]

---

[21] Docket No. 21-8, at 2.

[22] *Id.* at 3.

[23] *Id.*

[24] Docket No. 24-1, at 57.

[25] Docket No. 24-11.

[26] Docket No. 21, at 13.

[27] Docket No. 24, at 58.

[28] *Id.* at 60.

[29] *Id.* at 61.

Defendant never made any payment to Plaintiff pursuant to the Agreement and Guaranty[30] and Plaintiff filed this suit in September 2023. Plaintiff's Amended Complaint asserts three claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; and (3) foreclosure of security interests on all of Defendant's assets.[31] Plaintiff seeks damages in the amount of the Stipulated Loss Value minus what it recovered in the bankruptcy sale. Defendant asserts two Counterclaims for (1) breach of contract; and (2) attorney's fees.[32] Plaintiff filed a Motion for Partial Summary Judgment for claim 1, claim 3, and on Defendant's counterclaims. Defendant filed a Motion for Summary Judgment for Plaintiff's breach of contract claim. Plaintiff also filed a Motion to Exclude Defendant's expert witness.

## II. DISCUSSION

### A. Summary Judgment Motions

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[33] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[34] "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the

---

[30] Docket No. 30 ¶ 22.

[31] Docket No. 8, at 4–5.

[32] Docket No. 7, at 7–10.

[33] Fed. R. Civ. P. 56(a).

[34] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

claim."[35] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[36]

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact."[37] "Such a movant may make its prima facie demonstration simply by pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."[38] Once a movant has carried its initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[39]

    1. Breach of contract claim and counterclaim

Both Plaintiff and Defendant assert that the other side is liable for breach of contract as a matter of law. Under Utah law, the elements of breach of contract are: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages."[40] Plaintiff addresses these elements in its Motion, but Defendant does not. Both sides argue that the other materially breached the pertinent agreement, and while Cash Cloud and Defendant's breach is undisputed, Defendant asserts that Plaintiff materially breached the

---

[35] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[36] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[37] *Adler*, 144 F.3d at 670–71.

[38] *Id.* at 671; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[39] *Adler*, 144 F.3d at 671 (quoting Fed. R. Civ. P. 56(e)).

[40] *Haynes v. Dep't of Pub. Safety*, 2020 UT App 19, ¶ 6, 460 P.3d 567 (quoting *America West Bank Members, L.C. v. State*, 2015 UT 49, ¶ 15, 342 P.3d 224).

Agreement first and therefore cannot maintain a breach of contract claim against Defendant as a matter of law.

As an initial matter, it is undisputed that both the Agreement and Guaranty are valid contracts and the Court finds that Plaintiff is entitled to summary judgment as a matter of law on this element.[41]

Under Utah law, "a party first guilty of a substantial or material breach of contract cannot complain if the other party thereafter refuses to perform. He can neither insist on performance by the other party nor maintain an action against the other party for a subsequent failure to perform."[42] However, "[n]ot every minor failure justifies nonperformance and recission of the contract."[43] Rather, "[i]t must be something so substantial that it could be reasonably deemed to vindicate the other's refusal to perform."[44] To do so, the breach must be "so substantial and fundamental as to defeat the object of the parties in making the agreement."[45] "Whether a breach of a contract constitutes a material breach is a question of fact,"[46] and "[t]herefore, the issue will ordinarily be resolved by the fact finder, and summary judgment should be granted with great caution."[47]

---

[41] Docket No. 21, at 15; Docket No. 30, at 2–3.

[42] *Cross v. Olsen*, 2013 UT App 135, ¶ 25, 303 P.3d 1030 (quoting *CCD, LC v. Millsap*, 2005 UT 42, ¶ 29, 116 P.3d 366).

[43] *Saunders v. Sharp*, 840 P.2d 796, 807 (Utah Ct. App. 1992).

[44] *Id.* (quoting *Zion's Props., Inc. v. Holt*, 538 P.2d 1319, 1321 (Utah 1975)).

[45] *iDrive Logistics LLC v. IntegraCore LLC*, 2018 UT App 40, ¶ 65, 424 P.3d 292; *Cross*, 2013 UT App 135, ¶ 27 ("Certainly a failure of performance which defeats the very object of the contract or is of such prime importance that the contract would not have been made if default in that particular area had been contemplated is a material failure.").

[46] *Cross*, 2013 UT App 135, ¶ 29 (quoting *Orlob v. Wasatch Med. Mgmt.*, 2005 UT App 430, ¶ 26, 124 P.3d 269).

[47] *Id.* (internal quotation marks and citation omitted).

Defendant argues that Plaintiff did not perform under the contract because it materially breached the Agreement by filing a UCC-1 financing document and that filing the document went against the purpose of the parties Agreement, which was to form a "true lease," as stated in paragraph 30 of the Agreement.

Here, the object of the parties in making the Agreement was for Plaintiff to provide Cash Cloud the leased property.[48] It is undisputed that Plaintiff did so. Also, Cash Cloud made nearly every payment required under the original lease terms. If Defendant had an objection to Plaintiff's filing, Defendant or Cash Cloud could have addressed the issue long before this lawsuit was filed. Furthermore, Defendant's breach is not alleged to be connected to the fact that Plaintiff filed the financing document in May 2020. Even at the most fundamental level, Defendant's argument fails, but it also fails under the express terms of the contract as discussed below.

"A breach of express contract claims arises out of the express terms of the contract, and the breach [must be] proven in relation to those terms."[49] "When interpreting a contract, a court first looks to the contract's four corners to determine the parties' intentions, which are controlling."[50] Where "the language within the four corners of the contract is unambiguous, a court determines the parties' intentions from the plain meaning of the contractual language as a matter of law."[51] "A contract provision is ambiguous if it is capable of more than one *reasonable*

---

[48] Docket No. 21-3 ¶ 1; Docket No. 21-4, at 2; Docket No. 21-5, at 2

[49] *Christiansen v. Farmers Ins. Exch.*, 2005 UT 21, ¶ 10, 116 P.3d 259 261.

[50] *Fairbourn Com., Inc. v. Am. Hous. Partners, Inc.*¸ 2004 UT 54, ¶ 10, 94 P.3d 292 (internal quotation marks and citation omitted).

[51] *Id.* (internal quotation marks and citation omitted).

interpretation because of 'uncertain meanings of terms, missing terms, or other facial deficiencies."[52]

Defendant has not demonstrated that Plaintiff breached the clear terms of the contract, let alone committed a material breach.

The first part of paragraph 30 states:

> (a) Unless expressly set forth in a Schedule to the contrary, each Lease is intended to be a "true lease" under all applicable law, including for tax and bankruptcy purposes, and not a lease intended as security, loan, installment or conditional sales contract or any other type of agreement, and *Lessee shall not take any contrary position in any legal or administrative proceeding or otherwise.* As a precaution, in the event that contrary to the intentions of Lessee and Lessor a Lease is determined by a court or administrative body of competent jurisdiction to be other than a true lease under applicable law, in order to secured the prompt and full payment and performance as and when due of any and all obligations and indebtedness of Lessee to Lessor . . . Lessee hereby collaterally assigns, grants, pledges and conveys to Lessor for the benefit of the Lessor, a security interest . . . and security assignment in and lien on all Lessee's right, title and interest in, and under the following . . . the Master Lease, the Lease and Leased Property.[53]

There is no similar provision prohibiting Lessor (Plaintiff) from taking a contrary position. Based on this clear, unambiguous language, Plaintiff's UCC-1 filing did not breach the Agreement as a matter of law.

Plaintiff argues that its ability to file the UCC document is further supported by section (b) of paragraph 30 which reads:

> (b) With regard to any security interest created hereunder in any of the Leased Property, Lessee consents and agrees that *Lessor shall have all of the rights, privileges and remedies of a secured party under the UCC*. Lessee shall use its best efforts to protect Lessor's interest in the Leased Property, each Lease and the amounts due or to become due under each Lease. Lessee authorizes (and/or ratifies) Lessor and any Assignee to file UCC financing statements, precautionary security instruments, continuation, amendment, fixture or other filings in the appropriate

---

[52] *Id.* (quoting *Winegar v. Froerer Corp.*, 813 P.2d 104, 108 (Utah 1991)).

[53] Docket No. 21-3 ¶ 30(a).

filing or recording office and/or to take any other measure as Lessor deems necessary to evidence and protect Lessor's interest in the Leased Property.[54]

Despite clear language allowing the filing of a UCC financing statement, Defendant argues that the term "hereunder" means that Lessor only has the rights of a secured party when, as described in section (a), a court has determined the Agreement is something other than a true lease. Plaintiff does not address this difference in interpretation since Defendant raises it for the first time in his Reply brief,[55] but it finds no support in the Agreement. Even if the Court accepts Defendant's interpretation, this does not demonstrate that Plaintiff breached the Agreement based on the language in section (a), which prohibits Cash Cloud from asserting a position that the lease is anything other than a true lease but contains no such prohibition for Plaintiff.

Defendant's second argument—that filing the UCC-1 document contravened the intentions of the parties for the Agreement to be a "true lease"—also fails. Under Utah law, "[w]hether a transaction in the form of a lease creates a lease or security interest is determined by the facts of each case."[56] Under Utah Code there are factors a court is to consider when determining whether a lease is a true lease or a secured interest.[57] These factors do not include whether the lessor filed a precautionary financing document. Further, other courts have not treated "the filing of [a] financing statement [that] was a result of an overabundance of caution to assure that [the lessor's] rights were protected,"[58] as an "admission"[59] or determinative of true

---

[54] *Id.* ¶ 30(b).

[55] Docket No. 36, at 4–5.

[56] Utah Code Ann. § 70A-1a-203.

[57] *Id.*

[58] *In Re Owen*, 221 B.R. 56, 62 (N.D. N.Y. 1998).

[59] *Id.*

lease status.[60] Defendant makes only conclusory assertions that the filing of the UCC-1 statement frustrated the purpose of the contract as a true lease without discussing or analyzing whether such an action did so. Accordingly, the Court finds that Defendant fails to demonstrate that Plaintiff's actions were a material breach and that Plaintiff demonstrates via undisputed facts that it performed in providing the kiosks and did not breach the Agreement by filing the UCC-1 as a matter of law.

Turning to the third element, it is undisputed that Cash Cloud breached the Agreement by failing to make payments and declaring bankruptcy.[61] Both are considered an "Event of Default"[62] under the Agreement. Pursuant to the Agreement, both Cash Cloud's failure to make a payment due under the Lease within five days of the due date and the bankruptcy petition filed by Cash Cloud "give Lessor the right, with or without notice, to immediately enforce any right and/or remedy with respect to any guarantor, surety, letter of credit issuer, or other third party."[63]

It is also undisputed that Defendant has not made any payments to Plaintiff based on these breaches/default events under the Guaranty.[64] The Guaranty states that Defendant "absolutely, unconditionally and irrevocably guarantees the full, complete and prompt payment, performance and observance of all payment and other obligations of [Cash Cloud] under each Lease."[65] The Guaranty further states that "[i]f an Event of Default (as defined in the Master Lease) shall occur under any lease, [Plaintiff] may pursue its remedies against [Cash Cloud]

---

[60] *In re QDS Components, Inc.*, 292 B.R. 313, 345 (S.D. Ohio 2002).

[61] Docket No. 30 ¶¶ 22, 23.

[62] Docket No. 21-3 ¶ 19.

[63] *Id.*

[64] Docket No. 30 ¶ 22.

[65] Docket No. 21-5 ¶ 1.

and/or proceed directly against [Defendant] for the payment, performance or observance of any and all of [Cash Cloud's] obligations under the Lease."[66] Further, "[u]pon the occurrence of an Event of Default, [Defendant] hereby irrevocably grants a security interest in and authorizes [Plaintiff] to file any financing statements or other security instruments, in the appropriate filing office . . . and [Plaintiff] may then enforce any rights available to a secured party under the Uniform Commercial Code ('UCC')."[67] It is undisputed that Defendant breached the Guaranty and therefore, the Court concludes that Plaintiff has demonstrated it is entitled to summary judgment as a matter of law on this element.

Lastly, turning to damages, Plaintiff asserts that it is entitled to summary judgment under the express terms of the Agreement, Lease Schedule, and Guaranty.[68]

Under the Agreement, there are multiple remedies available to Plaintiff upon an Event of Default, including to "accelerate and declare immediately due and payable . . . all Basic Rent and other sums due as of the date of Default and to become due for the remaining Term . . . plus the purchase price applicable to the Purchase Option (the "Rent Default Value"),"[69] or "all Basic Rent and other sums due as of the date of the Default, plus an amount equal to the Stipulated Loss Value,"[70] which Plaintiff has elected here. Plaintiff is seeking the Stipulated Loss Value for 30 months. As explained above, the Stipulated Loss Value was expressly agreed to in the Lease Schedule.

---

[66] *Id.* ¶ 2.

[67] *Id.*

[68] Docket No. 21, at 17–18.

[69] Docket No. 21-3 ¶ 20.

[70] *Id.*

The Agreement provides that "[u]pon Lessee's payment in full of the Rent Default Value or the Stipulated Default Value, as applicable, and payment of any other remaining obligations of Lessee, Lessor will quitclaim Lessor's interest in the Leased Property to Lessee."[71] The Agreement also includes a provision that Lessor can pursue remedies in any order it deems expedient.[72] Further, as discussed above, the bankruptcy court's order does not preclude Plaintiff from seeking additional damages under the Agreement.

Defendant asserts that because Plaintiff claimed secured creditor status in the bankruptcy case after the Leased Property was sold, Plaintiff cannot now elect to receive the remedy of the Stipulated Loss Value because the Leased Property can no longer be transferred upon payment as required under the Agreement and Guaranty.[73] This argument mispresents the bankruptcy court proceedings. Plaintiff represented before the bankruptcy court that it was the owner of the leased equipment and objected to Cash Cloud's proposal to sell it.[74] The bankruptcy court overruled this objection and ordered the equipment sold.[75] By ordering the sale, the equipment became property of the bankruptcy estate, essentially allowing Cash Cloud to own the equipment without requiring Cash Cloud to comply with the terms of the lease. Moreover, there is no evidence that Cash Cloud did, or could, pay the Rent Default Value or Stipulated Default Value that would allow it to obtain the property. Even if it could, Cash Cloud would be entitled to the equipment, not Defendant. Any assertion that Defendant would be entitled to the equipment if he fulfilled Cash Cloud's obligations is not supported by the record. And even if the equipment belonged to

---

[71] *Id.*

[72] *Id.*

[73] Docket No 24, at 15.

[74] Docket No. 21-11.

[75] Docket No. 21-12.

Cash Cloud, the Guaranty makes clear that in the event of insolvency and upon liquidation, payment would first be made to Plaintiff.[76]

The contract language is clear and unambiguous regarding damages and accordingly, the Court does not find Defendant's argument persuasive. As discussed above, Plaintiff did not breach the Agreement by filing the UCC-1 document and the Stipulated Loss Value remedy was expressly contracted for and agreed to by the parties. The leased property was transferred to Cash Cloud via the bankruptcy court order, after which it was sold for the benefit of Cash Cloud. Plaintiff seeks the Stipulated Loss Value minus the amount it received from the bankruptcy, $273,773.50, for a total of approximately $1,040,601.50. Defendant guaranteed the full, prompt and complete payment of Cash Cloud's obligations under the Agreement and the Stipulated Loss Value is an obligation. Further, Defendant does not demonstrate that these damages are otherwise unenforceable under the contract. Accordingly, the Court finds that Plaintiff has demonstrated that it is entitled to summary judgment on these damages as a matter of law under the Agreement and Guaranty.

Plaintiff also seeks pre- and post-judgment interest in the amount of 18% per annum pursuant to both the Agreement and Guaranty. It is undisputed that Plaintiff can obtain prejudgment and post-judgment interest at a rate of 18% per annum.

Under Utah law, "[u]nless the parties to a lawful . . . contract expressly specify a different rate of interest, the legal rate of interest for the contract . . . or a claim for breach of contract is 10% per annum."[77] Here, the Agreement and Guaranty specify that upon default all amounts payable shall accrue prejudgment and post-judgment interest at 18% per annum from the date of

---

[76] Docket No. 21-5 ¶ 6.

[77] Utah Code Ann. § 15-1-1(2).

Default until paid in full.[78] Because the parties expressly agreed to this rate, it is appropriate for Plaintiff to recover prejudgment and post-judgment interest at 18% from Defendant.

Plaintiff also seeks attorney's fees, expenses and costs. Under the Agreement, Plaintiff "is entitled to recover all costs, expenses and reasonable attorney fees incurred . . . in defending or protecting its interest in the Lease and Leased Property."[79] Defendant agreed that Plaintiff "shall be entitled to recover from Guarantor all costs, expenses, and reasonable attorney fees incurred by Lessor in exercising any right or remedy" under the Guaranty.[80] Accordingly, the Court will order Plaintiff to file a Motion for Attorney's Fees with supporting documentation within ten days of this Order.

Based on the above analysis, the Court will decline to address Plaintiff's arguments that Defendant's counterclaims are barred under the Personal Guaranty.

2. Foreclosure of security interests on all assets of Defendant

Plaintiff also moves for summary judgment in its favor on the third cause of action for foreclosure of security interests on all assets of Defendant.[81] Defendant does not address this claim in his Response.

Under the Guaranty,

> Upon the occurrence of an Event of Default, Guarantor hereby irrevocably grants a security interest in and authorizes Lessor to file any financing statements or other security instruments, in the appropriate filing office that indicate as collateral to secure Guarantor's obligations hereunder all assets of Guarantor or words of similar effect . . . and Lessor may then enforce any rights available to a secured party under the Uniform Commercial Code ("UCC"). This authorization shall be deemed to be in accordance with all the requirements of the UCC and no further authorization or

---

[78] Docket No. 21-3 ¶ 29; Docket No. 21-5 ¶ 17.

[79] Docket No. 21-3 ¶ 29.

[80] Docket No. 21-5 ¶ 17.

[81] Docket No. 21, at 18–19.

act shall be required to authorize Lessor to file any such financing statements or other security instruments."[82]

Plaintiff asserts that it has perfected its security interest in all of Defendant's assets and is therefore "entitled to a judgment and decree of foreclosure of its lien against all of [Defendant's] assets, and to enforce its security interest in such assets by taking immediate possession thereof."[83] In its Motion, Plaintiff specifically seeks an order that Defendant is "require[d] . . . to turn over to AVT all property subject to the liens so that AVT can notice and conduct a foreclosure sale in accordance with applicable law."[84]

Under Utah law, "while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection" for purposes of security interests.[85] Defendant resides in Nevada.[86] Under Nevada law, "a financing statement must be filed to perfect all security interests."[87] "[A] financing statement is sufficient only if it: (a) Provides the name of the debtor; (b) Provides the name of the secured party or a representative of the secured party; and (c) Indicates the collateral covered by the financing statement."[88] "A financing statement sufficiently indicates the collateral that it covers if the financing statement provides: . . . [a]n indication that the financing statement covers all assets or all personal property."[89]

---

[82] Docket No. 21-5 ¶ 2.

[83] Docket No. 8 ¶ 37.

[84] Docket No. 21, at 19.

[85] Utah Code Ann. § 70A-9a-301(1).

[86] Docket No. 30, Ex. A., at 6:22–23 (Q. "And Las Vegas is your place of residence?" A. "Yes.").

[87] Nev. Rev. Stat. § 104.9310(1) (2024).

[88] *Id.* § 104.9502

[89] *Id.* § 104.9504.

The financing statement that Plaintiff submitted meets all three requirements. The financing statement lists Defendant as the debtor and provides the name of a representative of Plaintiff.[90] The financing statement also lists all assets of Defendant as the collateral covered by the financing statement.[91] Accordingly, because Plaintiff has demonstrated it is entitled to foreclose its security interest in Defendant's assets as a matter of law, the Court will grant summary judgment on this claim in favor of Plaintiff.

3. Attorney's fees counterclaim

Because the Court granted summary judgment in favor of Plaintiff and because the Guaranty only provides that Plaintiff as "Lessor" is entitled to recover attorney's fees from Defendant as Guarantor,[92] the Court will grant Plaintiff's Motion for Summary Judgment on the counterclaim for attorney's fees.

Finally, Plaintiff states in its Motion that if the Court grants summary judgment in its favor, it will dismiss its second cause of action for breach of the implied covenant of good faith and fair dealing. The Court will order Plaintiff do so within ten days of this Order.

B. Motion to Exclude

Plaintiff also filed a Motion to Exclude Testimony of Defendant's Proposed Expert Edward Burr.[93] Mr. Burr's opinion supported Defendant's breach of contract counterclaim damages. Because the Court grants summary judgment in favor of Plaintiff on the breach counterclaim on other grounds, without considering the opinion, the Court will deny this Motion as moot.

---

[90] Docket No. 21-14, at 2; Docket No. 21-2 ¶ 14.

[91] Docket No. 21-14, at 2.

[92] Docket No. 21-5 ¶ 17.

[93] Docket No. 22.

## III. CONCLUSION

It is therefore

ORDERED that Plaintiff's Motion for Partial Summary Judgment (Docket No. 21) is GRANTED; it is further

ORDERED that Plaintiff's Motion to Exclude (Docket No. 22) is DENIED AS MOOT; it is further

ORDERED that Defendant's Motion for Summary Judgment (Docket No. 24) is DENIED; it is further

ORDERED that Plaintiff is to file a motion to dismiss claim 2 within ten days of this Order; it is further

ORDERED that Plaintiff is to file a motion for attorney's fees, costs, and expenses and a proposed judgment within ten days of this Order.

DATED May 28, 2025.

BY THE COURT:

_____
TED STEWART
United States District Judge